IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SOCLEAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-2701 |
| | ) | |
| v. | ) | Judge Martha M. Pacold |
| | ) | Magistrate Judge M. David Weisman |
| 3-C DIGITAL TECHNIQUE STORE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**CHOICEONE'S REPLY IN SUPPORT OF ITS OPPOSED MOTION TO RECOVER SOCLEAN'S TRO BOND**

Defendant Choice One Medical d/b/a CPAP Life ("ChoiceOne") replies in support of its Opposed Motion to Recover SoClean's[1] TRO Bond (the "Motion") as follows:

## Introduction

This case is a cautionary tale against obtaining extraordinary judicial remedies without performing basic Rule 11 diligence. Plaintiff SoClean chose to seek an *ex parte* TRO against an extensive list of defendants who were allegedly selling infringing CPAP cleaning machines on Amazon's website. Proceeding without notice and with no opportunity to respond, SoClean obtained an order prohibiting ChoiceOne from selling a product completely unrelated to the SoClean Patented Product. ChoiceOne sells a CPAP dust cover and mat—products that no one could assert in good faith infringed the SoClean Patented Product. Again, prior to providing ChoiceOne with any notice of the TRO that had been entered against it, SoClean used its wrongfully obtained injunction to compel Amazon to remove ChoiceOne's clearly non-infringing product from its marketplace.

---

[1] Capitalized terms have the meaning as used in ChoiceOne's Opposed Motion to Recover SoClean's TRO Bond (ECF No. 28).

It is immediately apparent to anyone who follows the link that SoClean provided in its Complaint and motion for TRO that the ChoiceOne accused product does not even arguably infringe on the SoClean Patented Product. Yet, SoClean used one of the most powerful tools available under the Federal Rules to wrongfully prohibit ChoiceOne from selling its product on Amazon, now for weeks, with no end to this wrongful restraint in sight.

While the Federal Rules provide a process to obtain such remarkable relief under very narrow circumstances without notice or an opportunity to be heard, they also provide a way to address the consequences of a wrongfully entered injunction. That method for redress is recovery under the injunction bond. Here, this Court has already required SoClean to post a $10,000 bond to address the harm caused by a potential wrongful injunction. *See Sprint Comms. Co. L.P. v. CAT Comms. Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003) (the injunction bond can be "seen as a contract in which the court and the applicant 'agree' to the bond amount as the 'price' of a wrongful injunction."). The eventuality for which this Court required SoClean to post the injunction bond has now come to pass. ChoiceOne was wrongfully restrained, and for Rule 65(c) to have any meaning, ChoiceOne must be permitted to recover SoClean's $10,000 bond.

In its Response to ChoiceOne's Motion to Recover Bond ("Response"), SoClean does not even attempt to defend its actions. SoClean does not argue that the TRO was proper, or that it even had a Rule 11 basis for obtaining the TRO against ChoiceOne in the first place. Indeed, it could not in good faith argue either point. Rather, SoClean claims that ChoiceOne is not a "prevailing party" because the Court itself did not dismiss SoClean's claim, and it argues that ChoiceOne's damages are speculative.

SoClean, however, provides no authority for the radical proposition that the "prevailing party" analysis applicable to fee-shifting statutes is applicable to Rule 65(c) (because there is none). In fact, SoClean's position has been expressly rejected by federal courts across the country.

With respect to ChoiceOne's proof of damages, ChoiceOne has submitted sworn testimony reliably establishing its damages, while SoClean submitted no rebuttal evidence on damages. SoClean cannot escape liability based only on a conclusory label that such damages are "speculative." Therefore, SoClean's injunction bond should be awarded to ChoiceOne.

## Argument

### A. SoClean's TRO wrongfully enjoined ChoiceOne from selling a product that it has the legal right to sell, thereby harming ChoiceOne.

Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Pursuant to Rule 65(c), the Court required SoClean to post a $10,000 bond for payment of damages to any person as a result of a "wrongful restraint hereunder." ECF No. 12, ¶ 10. In the Seventh Circuit, a wrongfully enjoined party is presumptively entitled to recover under an injunction bond. *Coyne-Delaney Co., Inc. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 392 (7th Cir. 1983). "[I]f a party obtains a preliminary injunction in bad faith, that party flunks the good faith test and the presumption in favor of enforcement of the bond congeals virtually into rock." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032 (9th Cir. 1994) (internal quotations and brackets omitted).

While the Seventh Circuit has not specifically defined when a party has been wrongfully enjoined, "other courts of appeals have concluded that a party was 'wrongfully enjoined' if it is determined that the enjoined party always had the right to do the enjoined act." *Rustic Retreats*

*Log Homes, Inc. v. Pioneer Log Homes of British Columbia, Inc.*, 2022 WL 1135008, at *1 (E.D. Wisc. Apr. 18, 2022) (citing, e.g., *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990); *Nintendo of Am., Inc.*, 16 F.3d at 1036)). "[I]t is settled that the recoverable damages under such a bond are those that arise from the operation of the injunction itself . . ." *Lever Bros. Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115, 120 (4th Cir. 1976). That standard should apply here, and ChoiceOne easily meets it.

There is no question that ChoiceOne always had the right to sell the accused product, which does not even arguably infringe on the SoClean Patented Product. SoClean does not attempt to argue otherwise. Rather, SoClean takes out of context isolated language from *Coyne-Delaney*, 717 F.2d at 391, that a "prevailing defendant" is presumptively entitled to recover on an injunction bond, and contends that ChoiceOne "does not qualify as a 'prevailing party' under patent law." Response, at 1. SoClean reasons that in order to be a "prevailing party," there must be a "finding by the Court in this case that ChoiceOne did not infringe SoClean's '121 Patent," and since SoClean dismissed ChoiceOne from this case through its filing of an amended complaint, there has been no such finding. *Id.*

SoClean fails to mention that courts across the country have rejected its position that voluntary dismissal absolves its liability on the injunction bond. *See*, *e.g.*, *LaSalle Cap. Grp., Inc. v. Alexander Doll Co., Inc.*, 1995 WL 584429, at *3 (N.D. Ill. Oct. 2, 1995) (rejecting plaintiff's argument that an adjudication on the merits is a prerequisite to an action on the bond); *U.S. D.I.D. Corp. v. Windstream Comms., Inc.*, 775 F.3d 128, 140 (2d Cir. 2014) (rejecting plaintiff's argument that an injunction bond award requires a "final adjudication on the merits," holding a defendant need only have been "wrongfully restrained"); *Middlewest Motor Freight Bureau v. U.S.*, 433 F.2d 212, 243 (8th Cir. 1970) (recognizing the "generally adopted position that the voluntary dismissal

of an injunction suit by a plaintiff without the consent of the defendant is a determination of the merits of a controversy so as to render the plaintiff and his sureties liable on the injunction bond."); *Almoss, Ltd. v. Furman*, 2007 1975571 (S.D.N.Y. July 6, 2007) (holding that "voluntary dismissal is treated as a final determination on the merits favorable to defendant so as to render the plaintiff and his surety liable on the injunction bond.")

As the Second Circuit in *Windstream Communications* explained, in the "usual case," an adjudication on the merits will resolve whether the defendant was wrongfully enjoined. *Windstream Comms., Inc.*, 775 F.3d at 138. "That is because it is the final adjudication . . . [that] ordinarily establishes whether the defendant should not have been engaging in the conduct that was enjoined." *Id.* By voluntarily dismissing its suit, however, the plaintiff has "abandoned its right" to an adjudication on the merits, and deprived the defendant of the opportunity to show it was wrongly enjoined. *Id.* at 139. Under such circumstances, the plaintiff has "decided that its claims should not be pursued to trial," and "can hardly insist that the defendant have no opportunity to establish that it was wrongfully restrained." *Id.* Therefore, "[f]ollowing a voluntary dismissal of a plaintiff's complaint, recovery on Rule 65(c) security requires only a determination that the defendant was 'wrongfully restrained.' " *Id.* at 140.

Moreover, SoClean fails to address the perverse implications of the rule it proposes. Namely, if SoClean's proposed rule were adopted, parties who most egregiously violate their Rule 11 obligations and obtain *ex parte* TROs with no legal or factual justification could escape scot-free by voluntarily dismissing their case, even though all the damage from a wrongful injunction would have already been incurred. *See LaSalle Cap. Grp., Inc.* 1995 WL 584429, at *3 (rejecting plaintiff's argument because it "would allow a plaintiff to bring a suit for injunctive relief either knowing that its claim is without merit, or realizing later that it had no merit, dismiss the suit, and

thereby avoid any consequences for damages suffered by the enjoined party as a result of the wrongly entered injunction."). SoClean cites no authority for its radical proposition, and there is none. Since ChoiceOne always had the legal right to sell the accused product, it was "wrongfully restrained" within the meaning of Rule 65(c), and is entitled to recover SoClean's bond.

**B. ChoiceOne has established that it was proximately damaged in excess of $10,000 by SoClean's TRO.**

Having established that it was wrongfully enjoined, ChoiceOne need only demonstrate that it was proximately damaged to recover SoClean's injunction bond. *See Triumph v. Ward*, 2011 WL 6754044, at *5 (N.D. Ill. 2011) (recognizing that a "wrongfully enjoined defendant must establish what damages were proximately caused by the erroneously issued injunction") (quoting 11 A Wright & Miller, *Fed. Prac. & Proc.* § 2973 (2d ed. 2010)). In the Seventh Circuit, a wrongfully enjoined party is presumptively entitled to damages on the injunction bond "unless there is a good reason for not requiring the plaintiff to pay in a particular case." *Coyne-Delaney*, 7171 F.2d at 391. Such a rule "makes the law more predictable and discourages the seeking of preliminary injunctions on flimsy . . . grounds." *Id.* at 392. There could be no more flimsy a basis upon which to seek an injunction than here—the very link provided by SoClean in support of its injunction showed a product that no one could mistake for infringing the SoClean Patented Product.

While it is true that a damages award cannot be speculative, "proof of damages on an injunction bond need not . . . be to a mathematical certainty . . ." *Triumph*, 2011 WL 6754044, at *5 (quoting *Latuszewski v. Valic Fin. Advisors, Inc.*, 393 Fed. Appx. 962, 966–67 (3d Cir. 2010)). Rather, "some degree of speculation is permissible in computing damages, because reasonable doubts as to remedy ought to be resolved against the wrongdoer." *Mindgames, Inc. v. Western Pub. Co., Inc.*, 218 F.3d 652, 658 (7th Cir. 2000). A party proving damages has a "more relaxed burden

of proof than on the issue of causation [for purposes of establishing liability], especially if" the opposing party's conduct has made it difficult to prove the "precise extent of his damages." *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 795 (7th Cir. 2011). "Once the plaintiff proves injury, broad latitude is allowed in quantifying damages, especially when the defendant's own conduct impedes quantification." *Id.*

Here, ChoiceOne provided sworn testimony from its CEO that based on the average of its trailing three-month sales, it is losing, at minimum, $125.82 per day by being prevented from selling the accused product. Motion, Exhibit A ("First Greige Decl."), ¶ 12. That estimate is conservative, given that ChoiceOne's sales for the three months prior to the TRO were 70 percent higher than its sales from the three-month period one year earlier, and further increases in sales reasonably could have been expected to occur. *Id.* As of June 21, 2023, ChoiceOne is still unable to sell the accused product on Amazon due to SoClean's interference, and to date has been blocked for 43 days (May 9, 2023 to June 21, 2023). *See* Second Declaration of Michael Greige, attached as Exhibit A ("Second Greige Decl."), ¶ 4. Accepting the conservative estimate that ChoiceOne would have continued to earn $125.81 per day from the sales of the accused product, the "per day" damages to date are $5,409.83. *Id.* Every day that ChoiceOne is restrained, its damages increase.

Based on his experience as CEO and selling ChoiceOne's products on Amazon, Mr. Greige also testified that ChoiceOne's sales are directly related to its Amazon ranking. *Id.* ¶ 14. Having a higher Amazon ranking provides the following benefits: (1) when a customer enters a search query, products are listed in order of their ranking, making higher ranked products appear first, causing customers to buy higher-ranked products more frequently; (2) higher-ranked products are more often recommended by Amazon based on a given customer's search and buying history; (3) higher-ranked products are more frequently eligible for "flash sales" on Amazon, which promote

sales; and (4) products with higher rankings are generally more heavily promoted by Amazon for sale to customers. *Id.* ¶ 7. Consequently, there is significant value in having a higher ranking for a given product because it leads to greater sales. *Id.*

At the time that SoClean obtained the injunction, ChoiceOne's ranking for the accused product was 83,901. *Id.* ¶ 8. By May 26, that ranking had fallen to 273,585. *Id.* Today, that ranking is 304,250. *Id.* Mr. Greige estimates that ChoiceOne will have to incur $10,000 in advertising expenses to obtain the ranking it had before being improperly restrained. First Greige Decl., ¶ 15. Mr. Greige based that estimate on the amount of money that ChoiceOne historically spent on marketing to increase its ranking from about 270,000 to about 80,000. Second Greige Decl., ¶ 8.

While such projection of marketing expenses admittedly is not a mathematical certainty, it represents a reasonable and conservative estimate, based on relevant experience and sworn testimony from ChoiceOne's top employee. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 124 (1969) (recognizing a factfinder can make a "just and reasonable estimate of damage based on relevant data," and that "[a]ny other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim."); *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 22 (1st Cir. 2007) (affirming trial court's award of damages for the full amount of an injunction bond based on Verizon's affidavit demonstrating its damages exceeded the amount of the bond). Accordingly, ChoiceOne has established it was proximately damaged by SoClean's wrongful restraint in excess of SoClean's $10,000 bond, and should therefore be awarded the full amount of SoClean's bond..

SoClean claims "it is unclear if [ChoicOne's] 'lost sales' are solely for the Amazon listing at issue in this case or for all of ChoiceOne's Amazon listings. Response, at 3. The First Greige Declaration, however, was clear that ChoiceOne's calculation of "per day" damages were due to

ChoiceOne being prohibited from selling the accused product on Amazon. *See* First Greige Decl., ¶¶ 6–13. To put this issue to rest, Mr. Greige has confirmed this fact through the Second Greige Declaration, ¶ 3.

SoClean next argues that "lost sales" do not account for expenses that ChoiceOne would have incurred by making such sales. Response, at 3. Such argument is also meritless given that ChoiceOne has suffered well in excess of SoClean's $10,000 bond. To date, SoClean has suffered lost sales of $5,409.83, and it will continue to suffer damage until its accused Amazon listing and prior ranking are restored. Second Greige Decl., ¶ 2. Further, Mr. Greige has estimated it will cost $10,000 in marketing expenses alone to restore ChoiceOne's prior Amazon ranking. First Greige Decl., ¶ 15. In total, ChoiceOne has demonstrated damages of at least $15,409.83. ChoiceOne's costs of goods sold for the accused product, moreover, amount to only 9 percent of its sales, or $486.88 of the "per day" lost sales of $5,409.83. Second Greige Decl., ¶ 4. Accordingly, even accounting for costs, ChoiceOne's damages are $14,922, and still exceed SoClean's bond. *Id.* Moreover, this analysis is conservative because ChoiceOne has suffered additional damage due to having to carry inventory it is unable to sell, increasing ChoiceOne's working capital loans with its lenders. *Id.* ¶ 5. These additional damages for interest on outstanding loans are virtually the same as ChoiceOne's costs of goods sold. *Id.* ¶ 6.

SoClean's final argument is that any value attributable to ChoiceOne's loss in ranking is "too speculative to be included in any award." Response, at 3. Mr. Greige is ChoiceOne's CEO, and has significant experience selling products on Amazon. First Greige Decl., ¶¶ 1–2, 12–14. Mr. Greige testified that "ChoiceOne's sales are directly related to its Amazon ranking," and has explained why a product's Amazon ranking is so valuable. *Id.* ¶ 14; Second Greige Declaration ¶ 7. SoClean offers no evidence to rebut or undermine ChoiceOne's contentions, and its conclusory

label is insufficient to avoid the presumption in favor of awarding a recovery on SoClean's bond. "Once a party seeking recovery [of an injunction bond] adequately establishes its damages, it is entitled to a presumption in favor of recovery." *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 559 (2d Cir. 2011). In such circumstances, a "district court must have a 'good reason' to deny recovery against the bond," and the "burden of demonstrating that recovery should be denied is on the party opposing recovery." *Id.* SoClean falls far short of making the required showing. Accordingly, this Court should award SoClean's injunction bond to ChoiceOne.

**Conclusion**

Wherefore, ChoiceOne respectfully requests that the Court order that the full amount of SoClean's injunction bond be paid to ChoiceOne, and for any other and further relief that this Court deems just and necessary.

Dated: June 22, 2023

Choice One Medical d/b/a CPAP Life

By: /s/ Joseph L. Hoolihan

One of Its Attorneys

A. Colin Wexler
Joseph L. Hoolihan
GOLDBERG KOHN LTD.
55 East Monroe Street, #3300
Chicago, Illinois 60603
(312) 201-4000
colin.wexler@goldbergkohn.com
joseph.hoolihan@goldbergkohn.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on June 22, 2023, he caused a copy of the foregoing **CHOICEONE'S REPLY IN SUPPORT OF ITS MOTION TO RECOVER SOCLEAN'S TRO BOND**, to be filed on the Court's CM/ECF system, which will provide notice to all parties of record.

/s/ Joseph L. Hoolihan